# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

THOMAS HALE and JUSTIN WALLS,

    Plaintiffs,

    v.                          CAUSE NO.: 1:17-CV-108-HAB

TERRY STOFFEL, in his official capacity,

    Defendant.

## OPINION AND ORDER

This matter is before the Court on the Defendant's Motion for Summary Judgment [ECF No. 58], filed by Terry Stoffel on January 28, 2019. Plaintiffs Thomas Hale and Justin Walls sued the Defendant in his official capacity as the Sheriff of Huntington County, Indiana. The Plaintiffs allege that, during their incarceration at the Huntington County Jail, they were denied access to a law library, legal research materials, and legal assistance in violation of their Fourteenth Amendment rights. They are seeking damages.

The Defendant argues that he is entitled to judgment as a matter of law because no facts exist that would entitle either Plaintiff to monetary relief. The Plaintiffs were represented by counsel throughout their criminal cases, and they made only generic requests to research constitutional rights. Additionally, they suffered no injury.

For the reasons stated in this Opinion and Order, entry of summary judgment in favor of the Defendant is warranted.

## STATEMENT OF FACTS

For purposes of summary judgment "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A). These include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, [and] interrogatory answers." *Id.* The Defendant, in support of his Motion, provides a Statement of Material Facts [ECF No. 60], wherein he cites to the Plaintiffs' First Amended Complaint, the Defendant's Answer, the Plaintiffs' responses to requests for production of documents, Plaintiffs' deposition testimony, declarations, and interrogatory answers.

The Plaintiffs do not dispute the Defendant's properly supported facts. Accordingly, the Court will include them in its statement of facts to the extent they are relevant to resolution of the summary judgment motion.

The Plaintiffs' Brief in Opposition to Defendant Sheriff's Motion for Summary Judgment [ECF No. 62] contains a section labeled "Statement of Genuine Issues." This section contains five basic categories of facts. First, the Plaintiffs start by reciting forty paragraphs from the Plaintiffs' First Amended Complaint. (Pls.' Brief 2–5.) The Plaintiffs assert that it is appropriate to cite these paragraphs from their First Amended Complaint "both because it is designated as evidence by Defendant Sheriff in his Motion . . . and, although Defendant disclaims liability and argues Plaintiffs did not have underlying civil legal claims to pursue, because Defendant Sheriff in his Motion does not appear to

dispute the accuracy of Plaintiff's factual allegations concerning their lack of access to civil legal assistance in the Huntington County Jail." (*Id.* at 2.)

The Court will not include the complaint allegations in its statement of facts. Doing so would not be helpful or appropriate. Although the Defendant cited to the First Amended Complaint, he only did so as *one* of the sources that supports the dates the Plaintiffs were incarcerated in the Huntington County Jail. For other undisputed allegations that are contained in both the pleadings and other materials in the record the Court need only rely on the other materials.

The second and third categories of facts do not differ from the Defendant's version of facts. They are taken directly from two sources: the Defendant's Statement of Material Facts, and; the Defendant's Memorandum of Law in Support of Motion for Summary Judgment, which summarizes and condenses the facts set forth in the Defendant's Statement of Material Facts. As stated above, those facts are included to the extent they are relevant to resolving the summary judgment motion

For the fourth category, the Plaintiffs submit additional evidence in the form of the Declarations (titled as Affidavits) of Justin Walls and Thomas Hale. The Court will include this testimony in the statement of facts to the extent the Declarations are "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated," Fed. R. Civ. P. 56(c)(4), and do not contradict prior deposition testimony, *see, e.g.*, *Koppline v. Wis. Cent.*

*Ltd.*, 914 F.3d 1099, 1103 (7th Cir. 2019) (discounting affidavit testimony that contradicted unambiguous deposition testimony).

Finally, the Plaintiffs designate and cite to the Defendant's responses to Plaintiff's discovery requests. These facts are appropriate to consider on summary judgment.

**A.      The Huntington County Jail**

The Huntington County Jail is a criminal facility. Jeff Kyle, as the Jail Commander, is responsible for the maintenance of all aspects of the Huntington County Jail. The Huntington County Jail maintains a law library for use by inmates who are representing themselves in their criminal cases. The law library is maintained on a DVD/CD-Rom, which was prepared and compiled by the Indiana Public Defender's Office. Additionally, the Huntington County Jail maintains forms for use by inmates seeking post-conviction relief in State Court.

The Jail does not permit general access to the computer or DVD/CDRom for purposes of adequately controlling and monitoring the inmate population. An inmate must submit a request in writing to use the computer and DVD/CD-Rom. If an inmate is represented by an attorney, the inmate is not permitted access to the DVD/CDRom but is directed to communicate with counsel. When an inmate asks for information to file a petition for post-conviction relief, the Huntington County Jail provides the form for the inmate to complete by hand.

**B.     Justin Walls**

*1.     Commissary and Grievances*

Walls was held in the Huntington County Jail between July 2016 and November 2017. Upon his admission to the Huntington County Jail, Walls received a copy of the Huntington County Jail Rules and Procedures for Inmates. Walls familiarized himself with the Huntington County Jail Rules which included instructions concerning the use of the court system and law library. The Huntington County Jail Rules also discussed the grievance procedure and commissary ordering procedures. Commissary allowed inmates to purchase hygiene products, writing materials, candy, food, snacks and clothing.

As a new inmate, Walls was also provided a hygiene pack consisting of a comb, toothbrush, toothpaste, and soap. He received this same package of hygiene products every week that he did not otherwise purchase items from commissary. (Walls Dep. 40–41, ECF No. 58-4.) However, during a seventy-day period of discipline, Walls was not permitted access to non-standard indigent commissary products. According to Walls, this meant he had to "use state hygiene products that don't work when [he] could use Suave Body Wash." (Walls Dep. 41.) Walls also objected to the disciplinary restriction on commissary because it meant he could not use normal commissary ordering procedures to get toilet paper for $.50. Instead, he was charged $1.00 for making the request through his only other available option—completing a request slip and giving it to a jail officer.

Walls submitted grievances related to the commissary restriction. Commander Kyle advised that commissary was a privilege. Walls later filed a grievance complaining that lockdown punishment imposed on the group, which resulted in loss of privileges, was not appropriate when only certain inmates committed an infraction. Walls also filed grievances complaining that he was not being permitted access to the law library to research his rights related to his divorce proceedings, child support, and paternity. The Jail advised that its law library contained criminal law to assist offenders who were acting pro se in their criminal cases. In a separate grievance, Walls referenced his access to the law library to research the proper motion to complain to the courts about his criminal sentence. The Jail responded that Walls was represented by counsel in his underlying criminal case (*see* Cause No. 111 below), for which he was already sentenced, and that this attorney still represented him in a second criminal matter (*see* Cause No. 163 below).

## 2. *Criminal Matters*

Walls was sentenced in his underlying criminal case (Cause No. 111) on September 6, 2016. On September 9, 2016, a felony case (Cause No. 163) was opened in Huntington County Superior Court against Walls for battery against a public safety official. The incident that led to these charges is the same incident for which Walls was suspended from purchasing non-standard indigent materials from the commissary. Although Walls had been represented by counsel throughout Cause No. 111, he requested a public defender's appointment for Cause No. 163. The same public defender represented Walls

through the sentencing in Cause No. 163, and withdrew his appearance on February 15, 2017.

On December 22, 2016, Walls filed a Petition for Post-Conviction Relief (Cause No. 19) related to Cause No. 111. The Petition was completed on a form that Commander Kyle provided to Walls. On December 29, 2016, the court appointed Walls a public defender for Cause No. 19; however, Walls declined representation by public defender and notified the court of the same via written correspondence on March 16, 2017. Throughout his post-conviction proceedings, Walls filed various letters and pro-se motions with the court. On September 13, 2017, the court entered an administrative event, which provided:

> Correspondence received from the Defendant on 7/3/2017 regarding not having access to materials or an adequately trained person in the law. The Court had appointed the Petitioner a Public Defender in this cause on 12/29/16. On 3/16/17, the Petitioner informed the Court, by filing a Notice to the Court, that he wished to proceed pro se in this matter and waived his right to an attorney.

The court denied Walls' Petition for Post-Conviction Relief the same day. (Walls Dep., Ex. F.)

### 3.    *Civil Litigation*

Walls participated in civil cases during his incarceration. Walls independently filed a Motion to Modify Support on September 19, 2016, in a paternity and child support action filed prior to his incarceration that was pending in the DeKalb Circuit Court. On September 28, 2016, Wall's wife, Lawanda, filed a Petition for Dissolution of Marriage

with Child(ren) in the Allen Circuit Court. Although Walls was incarcerated throughout the divorce proceedings, he filed various pleadings including his appearance on October 5, 2016, and multiple letters between October 13, 2016, and November 15, 2017. On October 13, 2016, Walls filed his own Petition for Dissolution of Marriage with Child(ren) in the Allen Circuit Court. The court consolidated the two matters. The court, upon a request from Walls, ultimately ordered that the parties submit to a paternity test that would take place after Walls was released from the Huntington County Jail.

## 4.    *Requests for Access to Law Library*

Throughout his incarceration, Walls submitted numerous inmate request slips for access to the law library. On July 20, 2016, when Walls was represented by counsel in Cause No. 111, he submitted a request stating, "I need to go to the law library." (Walls Dep. 34, Ex. D.) Commander Kyle reviewed the request and responded the same day by informing Walls to contact his lawyer for any information he needed about his case. Walls followed-up with another request the same day, stating, "I need to go to the law library to get info that don't pertain to this case." (Walls Dep. 35–36, Ex. D.) Commander Kyle responded, "The law library is for the case you are incarcerated for. It's a criminal law library and has nothing to do with civil matters such [as] a divorce." (Walls Dep. Ex. D.) Five days later, Walls requested access to the law library to "know my rights under the new law." (Walls Dep. 36, Ex. D.) The request did not indicate what type of law, or case, Walls was referencing. Commander Kyle again noted that Walls was represented by a lawyer and could not use the library for a different case.

On September 19, 2016, Walls submitted a request for a printed copy of "all of the constitutional rights." (Walls Dep. 38, Ex. D.) The request did not indicate what constitutional rights were involved. Walls also submitted a separate request for a print out of Indiana's guidelines for inmate rights. Walls requested to go to the law library but did not indicate the basis for his request. Commander Kyle responded that he was not obligated to get this information for Walls, and he advised Walls that somebody could send him the materials. Walls's third request that day simply stated, "I would like to go to the law library." (Ex. D.) Commander Kyle's response was that Walls's case had been decided, so there was no need for a law library.

The next day, September 20, 2016, Walls requested access to the law library concerning the "new law" and requested the address for the ACLU. Commander Kyle instructed Walls to contact his public defender. On September 26, 2016, Walls submitted a request for access to the law library "to make sure [his] attorney is properly representing [him] according to new law." (Walls Dep. 48–49, Ex. D.) Walls was advised to write the court if Walls was having issues with his attorney.

On October 2, 2016, Walls submitted a request stating, "So do I not have the right to the law library to understand what is being said in my case?" (Walls Dep. 49, Ex. D.) Commander Kyle responded, "If you have a lawyer, it's the lawyer's responsibility to get you what you request. You have a lawyer." (Ex. D.)

On October 24, 2016, Walls requested access to the law library to research his civil rights regarding his divorce case. Walls' request also sought assistance from someone

adequately trained in the law. (Walls' Dep. 50, Ex. D.) Walls was informed that the Huntington County Jail was a criminal facility that did not have a civil law library, and could not help him with his civil issues. (Ex. D.)

Two days later, Walls submitted a request inquiring whether the Huntington County Jail had a law library of any kind and, if so, what resources were available, who is allowed access, and whether any fees were associated with use of the resources. (Walls' Dep. 53, Ex. D.) Commander Kyle responded, "criminal only." On October 26 and 31, 2016, Walls submitted requests for access to the law library for information regarding a DNA test related to his pending divorce proceeding. (Walls' Dep. 57, Ex. D.) Commander Kyle responded, "If you want legal paperwork for a civil matter, write the appropriate court or clerk's office for this material." (Walls Dep., Ex. D.)

On November 2, 2016, Walls requested access to the law library for his criminal case, Cause No. 111. (Walls' Dep. 61, Ex. D.) In response, Walls was provided with post-conviction relief paperwork, as well as the mailing address for the Huntington County Courthouse. (Walls Dep. 61, Ex. D.)

On November 15, 2016, Walls requested access to the law library because he was unsure if the post-conviction paperwork he was provided was correct. (Walls' Dep. 65, Ex. D.) Commander Kyle responded, "You have a lawyer on your current case." (Walls Dep., Ex. D.) Two days later, Walls again requested information about civil rights, to which Commander Kyle responded, "What type of civil rights are you asking about?" (Walls' Dep. 66, Ex. D.) Walls could not state whether he submitted a subsequent request

answering Commander Kyle's inquiry. (Walls' Dep. 66 (Q. And did you respond to him? A different request? A. I can't recall. I'm sure I probably did. I really can't recall.").)

On December 1, 2016, Walls requested access to the law library to conduct research for a civil matter. (Walls' Dep. 66, Ex. D.) Commander Kyle informed Walls that his request has been answered several times. (Walls' Dep. 67, Ex. D.) Five day later, Walls made a similar request wherein he cited 210 Ind. Admin. Code 3-1-15, which was a citation provided by his mother. (Walls' Dep. 67, Ex. D.)[1] Commander Kyle responded, "What, specifically, are you wanting to look up?" It is unknown whether Walls responded.

On December 21, 2016, Walls submitted a substantially similar request to his October 26, 2016, request regarding law library fees and access. Walls did not provide a specific reason for his request. (Walls' Dep. 68 (acknowledging that he was just asking in general who has access to the library), Ex. D.) The following day, Walls submitted a request concerning his divorce proceeding. (Walls' Dep. 69, Ex. D.) Commander Kyle again instructed Walls to write to the court for requested materials related to his divorce. (Walls Dep., Ex. D.)

---

[1] Subsection (a) of this section of the Indiana Administrative Code provides:
> The right of inmates to have access to the courts shall be ensured. Inmates shall have confidential access to their attorneys and the authorized representatives of their attorneys. Inmates shall have reasonable access to the courts to challenge their sentences and conditions of confinement and reasonable access to an adequate law library. Inmates with an appointed public defender shall be provided the opportunity to speak to their attorney.

210 Ind. Admin. Code 3-1-15(a).

On January 20, 2017, Walls requested access to the law library for his postconviction relief regarding Cause No. 111. (Walls' Dep. 70, Ex. D.) Commander Kyle reminded Walls that he was previously provided with a written packet concerning post-conviction relief. (Walls Dep. 70, Ex. D.)

Walls's last request was made on February 4, 2017, regarding liens, garnishments, and legal settlements. (Walls Dep. 72–73, Ex. D.)

## C.  Thomas Hale

### 1.  *Criminal Matters*

Hale was incarcerated in the Huntington County Jail between October 2016 and April 2017. Hale was incarcerated based on a conviction for criminal charges for dealing and manufacturing methamphetamine within 1,000 feet of a youth program center. Those charges were originally brought in May 2014 in the Huntington Superior Court ("Cause No. 132"). Hale was appointed a public defender who represented him throughout his trial. After a jury convicted Hale, and the court sentenced him, he was appointed another attorney for purposes of an appeal. Ultimately, the Indiana Supreme Court reversed the conviction and remanded the matter for a new trial. On remand to the Huntington Superior Court, his original trial counsel was reappointed.

Cause No. 132 was set for a new trial, originally to commence on February 9, 2017, but later continued to March 23, 2017. Even though he was represented by counsel, on October 7 and December 13, 2016, Hale filed written letters with the trial court. On December 13, 2016, the court entered the following administrative event, "Letter received

and placed in file. Defendant has an attorney. All Motions need to be made through his attorney." (Hale Dep., Ex. 1.) Six days later, Hale filed a Motion to Dismiss on his own behalf, prompting the trial court to deny his motion and advise:

"Defendant has counsel. All future filings must go through his attorney." (Hale Dep. 16, Ex. 1.)

On January 18, 2017, Hale filed a Motion to Release any and all information, to any and all reporters or investigators. The court entered the following administrative event:

> On 1/18/17, Defendant filed Motion to Release any and all information to any and all reporter or investigators filed. All pleadings must be signed by the Attorney of record. Defendant's motion was not signed or filed by his attorney. Motion is denied.

(Hale Dep. , Ex. 1.)

On January 26, 2017, although still represented by counsel, Hale filed another pro se motion. The trial court again noted that all filing must go through counsel, and took no action on the motion. (Hale Dep. 18, Ex. 1.)

The second jury trial was held on March 23, 2017, and the jury again found Hale guilty. Sentencing was scheduled for April 24, 2017, at which time Hale received the same sentencing of forty years, with none suspended. Trial counsel's appearance was withdrawn and original appellate counsel was appointed for purposes of appeal. Hale's conviction was upheld on appeal.

*5.*     *Requests for Access to Law Library and Grievances*

During his time of incarceration, Hale submitted numerous inmate requests slips to access the law library. On October 31, 2016, he requested access to the law library to "research civil rights case to assert [his] constitutional rights." (Hale Dep. 22, Ex. 2.) Hale did not have a pending civil case while incarcerated at the Huntington County Jail. Commander Kyle responded that civil law does not apply as the Huntington County Jail is a criminal facility and, as a result denied Hale's request. (*Id*.) On November 1, 2016, Hale submitted a general request for access to the law library for "a few things that [he] need[s] to research". (Hale Dep. 23, Ex. 2.) Hale was advised to ask his lawyer for the information. The same day, Hale submitted a request for a copy of the Indiana Jail Standards, the Huntington County Jails Standards, and a statement that he was indigent. (Hale Dep. 24, Ex. 2.) Hale was instructed to write the Huntington County lawyer.

On November 3, 2016, Hale requested access to the law library regarding his criminal case and to research civil issues to assist with his constitutional rights. Hale did not specify the issues he wanted to research. The request was denied. (Hale Dep. 25, Ex. 2.)

On November 28, 2016, Hale requested access to the law library "to research civil rights so [he] can assert [his] constitutional rights." (Hale Dep. 26, Ex. 2.) Commander Kyle responded, "What case? Which county? Previous case? Be more specific." (Hale Dep. 27, Ex. 2.) Hale did not provide any additional information with respect to the request. (Hale Dep. 27.) Two day later, Hale inquired whether the Huntington County

14

Jail had a law library and, if so, what resources were available. (*Id.*) Hale was informed that the Huntington County Jail had a criminal library that could be accessed if an inmate was representing himself in a criminal proceeding. (Hale Dep. 28, Ex. 2.)

On December 2, 2016, Hale submitted a request for the addresses for various bar associations. Commander Kyle responded that he did not need to provide Hale with that information and instructed Hale to "ask [his] lawyer." Hale did not request the information from his counsel but was able to obtain the information "through somebody else." (Hale Dep. 29, Ex. 2.)

On January 9, 2017, Hale requested the address for news stations in Fort Wayne. He did not specify the reason for his request, which was subsequently denied. (Hale Dep. 29–30, Ex. 2.)

On February 6, 2017, Hale requested a tort claim form. In response, he was told to write the court for the form. Hale did not write the court. (Hale Dep. 31.)

On February 17, 2017, Hale made another request for access to the law library to "assert [his] constitutional rights" as he had several subjects to research, and he was again instructed to ask his attorney. (Hale Dep. 31–32, Ex. 2.)

During the same time that he was submitting inmate request slips for access to the law library, Hale filed grievances against Commander Kyle complaining about the denial of access to the library. He filed these grievances on October 31, 2016, November 14, 2016, November 18, 2016, November 29, 2016, December 8, 2016, January 1, 2017, January 10,

2017, and February 7, 2017. The Jails advised Hale that requests for legal documents or information could be obtained from his attorney.

Hale also submitted grievances unrelated to his access to the law library. He submitted a grievance regarding the lack of toilet paper and his toilet paper restriction. The response was that he "had several rolls," which was the basis for the restriction, and that he needed to communicate with commissary. (Hale Dep. 54, Ex 3.) Hale also believes that he complained about hygiene products, specifically that when he ran out of the supply the Jail provided, he would have to purchase more through commissary if it was not yet time to receive another hygiene set from the Jail. (Hale Dep. 58.)


**ANALYSIS**

In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized as part of a state's constitutional obligations a duty to provide prison inmates with law libraries or other legal assistance at state expense, an obligation the Supreme Court described as part of a loosely defined "right of access to the courts" enjoyed by prisoners. *Bounds* announced that prisoners have the right to have the State "assist [them] in the preparation and filing of meaningful legal papers." *Id.* at 828. The Court held that at a minimum, States must furnish prisoners "with adequate law libraries or adequate assistance from persons trained in the law." *Id.*

The Court revisited this issue in *Lewis v. Casey*. 518 U.S. 343 (1996). The Court in *Lewis* stated that "[i]nsofar as the right vindicated by *Bounds* is concerned, 'meaningful

access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* at 351 (citation omitted). For example, a prisoner might show that he "had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint." *Id.* Or "that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known." *Id.* In *Lewis*, the Court limited the right of access to the courts to prisoners' ability "to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement." *Id.* at 355. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Id.* (emphasis in original).

The Plaintiffs argue that a jury should be permitted to decide whether the Defendant denied the Plaintiffs "civil legal assistance" that "harmed their pursuit of nonfrivolous claims." (Pls.' Br. in Opp'n, ECF No. 16.) To prevail on their claims, the Plaintiffs must be able to identify potentially meritorious challenges to their conviction, sentence, or conditions of confinement. *See Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006) ("[T]he mere denial of access to a prison law library or to other legal materials is not itself a violation of a prisoners rights; his right is to access *the courts*, and only if the defendant's conduct prejudices a potentially meritorious challenge to the prisoner's conviction, sentence, or conditions of confinement has this right been infringed.") (citing

*Lewis*, 518 U.S. at 351, 355)). The Court must also bear in mind that prison officials are afforded discretion in regulating how and when inmates are given access to legal materials. *See Lewis*, 518 U.S. at 351–52; *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).

## A.     Conditions of Confinement Claims

The Plaintiffs argue that the denial of access to the law library, or to "civil legal assistance," harmed their pursuit of claims related to their conditions of confinement. They note that being subjected to dangerous or degrading conditions of confinement violates the Eighth Amendment.[2] For his part, Hale asserts that he wanted to pursue claims concerning black mold, dirt, poor ventilation, and overcrowding. Walls focuses on his "desire to have visitation with his minor children as part of his fundamental rights as parent in pursuit of establishing paternity." (Pls.' Br. in Opp'n 20.) Both Plaintiffs argue that they "were denied adequate access to toilet paper and hygiene supplies in a manner that was unhealthful and degrading." (*Id.*)

In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" so that "a prison official's act

---

[2] The constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment and are distinguishable from an inmate's right not to be subjected to cruel and unusual punishment under the Eighth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979). Because the Plaintiffs have characterized their conditions of confinement claims under the Eighth Amendment, and because "pretrial detainees are entitled to at least as much protection as the constitution provides convicted prisoners," *Board v. Farnham*, 394 F.3d 469, 477 (7th Cir. 2005) (emphasis omitted), the Court need not determine whether the Plaintiffs were pretrial detainees, or already convicted, during the relevant periods.

results in the denial of the minimal civilized measure of life's necessities." *Id.* The subjective prong asks whether the defendant was deliberately indifferent. "[C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (quotation marks, brackets, and citation omitted).

### 1.    *Hygiene Products*

Objectively, "[t]here is, of course, a de minimus level of imposition with which the Constitution is not concerned." *Ingraham v. Wright*, 430 U.S. 651, 674 (1977); *see also Hudson v. McMillian*, 503 U.S. 1, 9–10 (1992). The Plaintiffs' complaints about toilet paper and hygiene product distribution falls within this category. Walls and Hale assert in their Declarations that "the jail would not provide [them] adequate access to toilet paper, soap, and hygiene supplies to stay clean and sanitary" and that this caused them to be exposed to "dangerous, unhealthful, humiliating, embarrassing, and undignified conditions of confinement in the jail." (Walls Dec. ¶¶ 7–8, ECF NO. 61-1; Hale Dec. ¶¶ 7–8, ECF No. 61-2.)

Declarations may be used to support or oppose a motion for summary judgment. Fed. R. Civ. P. 56(c)(4). However, the Plaintiffs' Declarations as it relates to this subject provide "conclusory statements, not grounded in specific facts," which "are not sufficient to avoid summary judgment." *See Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 726 (7th Cir.

2004). "Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter, rather it requires affidavits that cite specific concrete facts establishing the existence of [the] truth of the matter asserted." *Id.* (quoting *Drake v. Minn. Min. & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) (citations omitted)). "Conclusory allegations, unsupported by specific facts, will not suffice" to show that there is an issue for trial. *Payne v. Pauley*, 337 F.3d 767, 772 (7th 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

Where the Plaintiffs' vague and conclusory assertions are not supported by specific, concrete facts, their assertions must be disregarded. For example, the Plaintiffs do not provide factual instances to show how often they were denied toilet paper or hygiene products, or otherwise attempt to place parameters on what is considered "adequate access." Nor do they describe in what way this impacted their ability to stay "clean and sanitary."

This lack of detail is particularly troubling because Walls testified in his deposition that he was provided a hygiene pack consisting of a comb, toothbrush, toothpaste, and soap upon his arrival at the jail, and he received this same package of hygiene products every week that he did not otherwise purchase items from commissary. Although he was not permitted to purchase brand name hygiene products from commissary during a seventy-day period of discipline, he was still issued the basic hygiene kit. Walls's deposition testimony also reveals that his main issue with the toilet paper was that it cost

him $1.00 instead of $0.50—not that he was denied access to toilet paper. This does not describe conditions that fall below the minimal civilized measure of life's necessities.

Additionally, Walls does not allege conduct that satisfies the second prong of a deliberate indifference claim. Assuming for sake of argument that the products he was issued posed some sort of health risk, none of the evidence in the record suggests that Jail employees knew that Walls was at serious risk of being harmed by using the state-issued hygiene products, but decided not to do anything to prevent that harm from occurring. Walls's stated preference for brand name products does not suffice.

Hale's access to hygiene claims fare no better. The sole issue Hale identified in his deposition regarding toilet paper was being placed on a commissary restriction due to already having amassed more than his quota of toilet paper. Although he explained in his deposition that he used all the rolls of toilet paper for legitimate means, he also acknowledged that he relied on other inmates to help him out when he temporarily ran out of toilet paper before the next roll was issued. Although Hale also testified that he thought he filed a grievance regarding other hygiene products, he provided no details, and no such grievance is in the record. Accordingly, there was no objectively serious condition created by his toilet paper issues, and no known risks of harm that the Jail was responsible to prevent.

**2.    *Other Conditions of Confinement - Hale***

Hale asserts that "[t]he jail was overcrowded, had black mold, had poor ventilation, and was very dirty," however, "[he] could not research what [his] civil and

21

constitutional rights were or how to file a lawsuit over the endangerment to [his] health and safety and the degrading conditions [he] had to live in." (Hale Decl. ¶¶ 10–11.) Hale's conclusory Declaration does not provide any specific details regarding these conditions, or the consequences of the conditions on his health and safety, despite the extremely fact intensive nature of such constitutional claims. *See Gillis v. Litsher*, 468 F.3d 488, 492 (7th Cir. 2006).

For example, Hale makes no attempt to objectify what is meant by "overcrowded" or how it impacted him. There is no basis to conclude from the Declaration, or elsewhere in the record, that "poor ventilation" means anything more serious than the temperature was not perfectly regulated. "Dirty" may simply refer to the fact that there were rust stains in the sink, as Hale testified during his deposition. (Hale Dep. 47, ECF No. 58-5 at 48 (explaining that cleaning products did not remove the rust in the sinks).) Hale testified during his deposition that black mold grew in the shower that, although cleaned "at least once a week," started coming back in a week or so. (*Id.* at 47–48.) There is no evidence that the mold created health problems or was otherwise objectively serious. Moreover, as Hale's testimony reveals, the Jail was not deliberately indifferent to the existence of the mold. Accordingly, the record is devoid of any basis to find that the conditions could have been successfully challenged as "cruel and unusual under the contemporary standard[s] of decency" or that they effectively deprived Hale of "basic human needs." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Summary judgment is the moment in litigation where the nonmoving party is required to marshal and present the court with evidence on which a reasonable jury could rely to find in his favor. *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Hale's Declaration, which is the only evidence he has marshaled regarding the conditions of the Jail, does not contain testimony upon which a reasonably jury could rely to find that Hale suffered an "arguably actionable harm," but was "so stymied" by the inadequate access to a library that his right to access the courts to pursue a non-frivolous claim was violated.

It is also noteworthy that Hale did not file any grievance with the Jail concerning these purported conditions. Nor did any of his requests for access to the law library mention conditions of confinement or filing a civil rights action to challenge the same. There was no basis for the Jail to conclude that Hale, when he requested access to the law library, intended to research a claim regarding his conditions of confinement. Additionally, there is nothing in the record from which a reasonable jury could conclude that Hale would have acted differently, and filed a meritorious civil rights complaint, had he been given access to the law library or other legal assistance. Indeed, the record reveals that when Hale wanted to file motions and letters with a court, he did just that. On many occasions, even when he was represented by counsel. For all the above reasons, the Court finds that Hale was not denied "meaningful" access to the courts.

### 3. *Other Conditions of Confinement - Walls*

According to Walls, his conditions of confinement were impacted by his desire to "have visitation with his minor children as part of his fundamental right as a parent in pursuit of establishing paternity." (Pls.' Br. in Opp'n 20.) He cites to case law involving jail visitation policies. However, his Brief does not mention the Huntington County Jail's visitation policy, and that policy is not before the Court.

Family law litigation cannot fairly be characterized as an action attacking a sentence or challenging a condition of confinement, and "[i]mpairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration." *Lewis*, 518 U.S. at 355. Accordingly, the Defendant was not required to provide him with affirmative assistance. *See Snyder v. Nolen*, 380 F.3d 279, 291 (7th Cir. 2004).

In any event, Walls was able to file his own divorce petition and to request a paternity test. The court consolidated his divorce proceedings and ordered DNA testing to be completed after he was released. Such testing was indeed performed. Walls has not, on this record, established what injury was brought about by the Jail's actions related to his requests to access the law library to research his family law matters.

### B. Post-Conviction Relief

The Plaintiffs assert that they have cited evidence that creates a dispute whether the Defendant's "denial of access to civil legal assistance prevented them from pursuing

nonfrivolous petitions for post-conviction relief and writs of habeas corpus while confined in the Huntington County Jail." (Pls.' Br. in Opp'n 21.)

1. **Walls**

With respect to mounting a challenge to his conviction or sentence, Walls asserts that his petition (Cause No. 19), although filed in state court, was "dismissed because the jail refused to provide [him] with civil legal assistance to understand how to present [his] petition and understand the law that would support the request in [his] petition." (Walls Dec. ¶ 19.) This conclusory statement is not evidence that establishes the actual basis for the dismissal. It does not show that harm resulted from the inability to access the law library. *See Lewis*, 518 U.S. at 351 (1996) (holding that *Bounds v. Smith* did not eliminate the actual injury requirement as a constitutional prerequisite to a prisoner asserting lack of access to the courts). Without some evidence showing the reason for the dismissal, there is simply no basis to believe that the denial of access to legal materials caused a potentially meritorious claim to fail.

Moreover, the state court appointed Walls a public defender for Cause No. 19. Walls declined the representation after he obtained notice that the attorney would likely not be able to get to his case before Walls was scheduled for release. Walls continued to litigate the matter, and informed the state court that he did not have access to materials or to a person adequately trained in the law. The state court noted that Walls had been appointed a public defender, and subsequently waived his right to an attorney. This does not present a scenario where the Defendant has deprived the Plaintiff of access to the

courts. Walls simply wanted a more expeditious resolution of his claims than what he believed an attorney could provide. However, nothing in the summary judgment record suggests that, even with an attorney, the court would not have dismissed his petition.

Walls asserts that he would have filed another petition to challenge the sentence in a second criminal case. However, he never even requested a second habeas packet from the Jail. Additionally, his deposition testimony establishes that he did not believe there was any basis to challenge the sentence in that case. (Walls Dep. 96.)

Finally, Walls argues that he would have challenged the Jail's disciplinary action because he thought the punishment was wrong because he "did not intentionally throw an object at an officer like [he] was accused of by the jail" and there "was not sufficient evidence to discipline [him]." (Walls Dec. ¶¶ 12–13.) Due process requires that basic procedural protections accompany prison disciplinary proceedings if those proceedings result in the loss of good time credits. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985). However, there need only be "some evidence" to support the decision of the prison disciplinary board to satisfy due process. *Id.* at 455–56 ("[T]he relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.").

Walls does not allege that his discipline resulted in a loss of good time credits. Even if it did involve such a liberty interest, Walls does not dispute that he threw an object, only that it was not an intentional act. But the same conduct that led to the discipline was the subject of Case No. 163, for which the Walls pled guilty to Battery

Against a Public Safety Official, a Class 6 Felony under Indiana Code § 35-42-2-1(c)(1). The statute requires a "knowingly or intentionally" touching of "another person in a rude, insolent, or angry manner." Ind. Code § 35-42-2-1(c)(1). Accordingly, the Court cannot imagine how any challenge to the discipline would have been considered anything but a frivolous filing.

2.    *Hale*

According to Hale's Declaration, he "wanted to prepare and research a challenge to the sentence" in his criminal case "through a petition for post-conviction relief . . . because [he] did not believe the evidence in [his] criminal case supported the extreme length of [his] sentence." (Hale Dec. ¶¶ 12–13.) He avers that, "[a]s a result of not being provided civil legal assistance, [he] . . . [is] now being incarcerated longer than [he] should be." (*Id.* ¶ 15.)

"At summary judgment, . . . saying so doesn't make it so; summary judgment may only be defeated by pointing to admissible evidence in the summary judgment record that creates a genuine issue of material fact." *United States v. 5443 Suffield Terrace*, *Skokie, Ill.*, 607 F.3d 504, 510 (7th Cir. 2010). It is undisputed that Hale was incarcerated in the Huntington County Jail between October 2016 and April 2017. Hale was sentenced in his criminal case in April 2017. He subsequently filed an appeal, which was denied on September 7, 2017. *See Hale v. State*, 91 N.E.3d 1097 (Ind. Ct. App. 2017) (affirming challenge to length of sentence imposed). Transfer to the Indiana Supreme Court was

27

denied on October 24, 2017, six months after Hale had already left the Huntington County Jail. *See Hale v. State*, 94 N.E.3d 299 (Ind. 2017).

According to this timeline, Hale could not have collaterally attacked his sentence during the time he was incarcerated at the Huntington County Jail. *See* 28 U.S.C. § 2244(d)(1)(A) (setting forth statute of limitations that runs from the "date on which the judgment becomes final by the conclusion of direct review"). This means that the lack of access to a law library did not result in any injury to Hale, and the Defendant is entitled to judgment as a matter of law.

## CONCLUSION

For the reasons stated above, the Court GRANTS the Defendant's Motion for Summary Judgment [ECF No. 58]. The Clerk is DIRECTED to enter judgment in favor of the Defendant and against the Plaintiffs.

SO ORDERED on May 28, 2019.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT